UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

SEAN R. MILLER,
                            Plaintiff,
    vs.                                                   9:13-CV-1405
                                                                        (DNH/ATB)
MICHELLE WINCHELLE, et al.,
                            Defendants.

_____

SEAN R. MILLER, Plaintiff pro se
JAMES E. CULLUM, ESQ., Attorney for Defendant Rodenmayer
JOHN D. ASPLAND, ESQ., Attorney for Defendant Winchelle
WILLIAM A. SCOTT, ESQ., Attorney for Defendant Winchelle

ANDREW T. BAXTER, United States Magistrate Judge

**REPORT-RECOMMENDATION**

      The pro se civil rights complaint in this action, liberally construed, alleges that plaintiff, an inmate from Washington County Jail, was deprived of constitutionally adequate medical care by defendant Wade H. Rodenmayer–a physician's assistant who treated plaintiff at the Glens Falls Hospital emergency room in July 2013. (Compl., Dkt. No. 1 at 6, 8). On March 21, 2014, defendant Rodenmayer filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 10), which was referred to me for Report-Recommendation by U.S. District Judge David N. Hurd. After reviewing the motion to dismiss, the response, the reply, and all the documents that were submitted in support of the briefs and plaintiff's complaint, I found it prudent to convert defendant's motion into one for summary judgment and allow both parties to supplement their papers accordingly. (Dkt. No. 49). Defendant

filed additional materials in support of his motion on December 9, 2014, including extensive medical records. (Dkt. No. 50). Plaintiff has not submitted additional materials.

For the reasons set forth below, this court concludes that, based on the current record, no reasonable fact finder could conclude that defendant Rodenmayer was acting under color of state law when he treated plaintiff, or that he acted with deliberate indifference to plaintiff's serious medical needs. Accordingly, this court recommends granting defendant Rodenmayer's motion for summary judgment and dismissing plaintiff's claims against him.

# DISCUSSION

## I. Facts[1]

Plaintiff alleges that, after he arrived at Washington County Jail on May 5, 2013, he was denied his seizure medication. On July 11, 2013, plaintiff injured his finger while playing basketball at the Jail. (Dkt. No. 50 at 44). As a result of this injury, plaintiff was taken to the emergency room at Glens Falls Hospital on July 12, 2013.[2] Defendant Rodenmayer treated plaintiff for the injury to his finger. (Dkt. No. 50 at 45-46). X-rays were taken, plaintiff's finger was anesthetized, the dislocation

---

[1] The court has previously described the facts as pleaded in plaintiff's complaint. (*See, e.g.,* Dkt. No. 47, 49, 52). Therefore, the facts will be described only as necessary to address defendant Rodenmayer's motion for summary judgment.

[2] Plaintiff first visited the hospital for this finger injury on July 11, 2013 at 11:46 p.m., but left after 1 a.m. that night. (Dkt. No. 50 at 10, 11, 22). Plaintiff returned to the hospital at 4:36 p.m. on July 12, 2013, and was discharged at 7:05 p.m. (Dkt. No. 50 at 33). Plaintiff saw defendant Rodenmayer during the second visit.

2

was reduced, and his finger was placed in a splint. (Dkt. No. 50 at 46). While being treated for this injury, plaintiff alleges that he had a seizure that lasted two to three minutes. (Dkt. No. 1 at 6-7). The medical records indicate that while plaintiff's finger was being anesthetized, he had "a shaking type episode and a vasovagal type response." (Dkt. No. 50 at 46). Plaintiff "was able to communicate verbally during the entire episode." (*Id.*).

Plaintiff alleges that he had several other seizures while at the hospital, and, after his discharge, in the parking lot. The head nurse was consulted and decided that plaintiff would not be re-admitted to the hospital. (Dkt. No. 1 at 6-7). There is no indication that any of these other seizures occurred while plaintiff was being treated by defendant Rodenmayer, or that he was involved in the decision not to re-admit plaintiff.

## II. Summary Judgment

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin v. Goord*, 467 F.3d at 272.

## III. <u>State Action</u>

Defendant Rodenmayer argues that plaintiff's claim against him should be dismissed because he is not a "state actor."[3] To support his action pursuant to 42 U.S.C. § 1983, plaintiff must show, not only a violation of a right secured by the Constitution, but also "that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "To constitute state action, 'the deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible,' and 'the

---

[3] Defendant Rodenmayer also moved to dismiss plaintiff's claim against him because the complaint failed to mention P.A. Rodenmayer in the "Causes of Action" section. In light of plaintiff's pro se status, and the other allegations in the complaint against defendant Rodenmayer, the court would not recommend dismissing defendant Rodenmayer simply because he was not mentioned in one section of the complaint.

4

party charged with the deprivation must be a person who may fairly be said to be a state actor.'" *Id.* at 49 (citation omitted).

While discussing "state action" in the context of medical care for inmates, the *West* court stated that "[i]t is the physician's function within the state system, not the precise terms of his employment that determines whether his actions can fairly be attributed to the State. . . . Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their [] rights." *Id.* at 55-56.

In support of his contention that defendant Rodenmayer was not a state actor when he treated plaintiff, defense counsel submitted an affidavit of Linda Gaston, the Director of Risk Management at Glens Falls Hospital. (Dkt. No. 10-4). In this affidavit, Gaston states that Glens Falls Hospital is a private not-for-profit hospital, and not a government entity. (*Id.* at ¶ 2). Defendant Rodenmayer was employed by Glens Falls Hospital as a physician's assistant in July 2013. (*Id.* at ¶ 7). The medical records submitted to the court (Dkt. No. 50 at 8-59), show that the relevant medical care was provided to plaintiff at the hospital, not at the Jail, which would weigh against considering defendant Rodenmayer a state actor. *See West*, 487 U.S. at 57 ("Respondent carried out his duties at the state prison within the prison hospital. That correctional setting . . . inevitably affects the exercise of professional judgment.").

Ms. Gaston undertook a diligent search to determine if there was any contract between Glens Falls Hospital and Washington County regarding the treatment of

inmates of Washington County Jail. (*Id.* at ¶ 3). She inquired of "five different officers and employees" who would have had knowledge of the existence of any such contract. (*Id.* at ¶ 4). Ms. Gaston was "advised by each of these individuals that they have neither knowledge or possession of any contract between Glens Falls Hospital and any entity pertaining to treatment of prisoners of the Washington County Jail." (*Id.* at ¶ 5). In the absence of any evidence offered by plaintiff that the Glens Falls Hospital and its employees provided him medical care pursuant to some contractual or other special or ongoing arrangement with Washington County Jail, no reasonable fact finder would conclude that P.A. Rodenmayer acted under color of state law when he treated plaintiff in the emergency room. *See, e.g. Sykes v. McPhillips*, 412 F. Supp. 2d 197, 204 (N.D.N.Y. 2006) (a physician, not under contract with DOCCS to treat inmates, engaged in a single encounter with a prisoner presented for emergency treatment; he did not act under color of state law even though the hospital regularly treated inmates and the physician knew plaintiff was an inmate when he treated him); *Nunez v. Horn*, 72 F. Supp. 2d 24 (N.D.N.Y. 1999) (a physician who, without a contractual relationship with DOCCS, performed surgery on a state inmate in a private hospital did not act under color of state law); *Rosseter v. Annetts*, No. 9:10-CV-1097 (NAM/TWD), 2012 WL 4486082, at *7 (N.D.N.Y. Jun 29, 2012) (physician who saw a county jail inmate in his private office, because he was on call for referrals from the hospital emergency room, and who had no contractual or other arrangement with the jail, was not a state actor) (Rep't-Rec.), *adopted*, 2012 WL 4482858 (N.D.N.Y. Sept. 27, 2012).

6

## IV. Denial of Medical Care

### A. Legal Standards

In order to state a claim based on constitutionally inadequate medical treatment,[4] the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). There are two elements to the deliberate indifference standard. *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003). The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184 (citing *inter alia Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

#### 1. Objective Element

In order to meet the objective requirement, the alleged deprivation of adequate medical care must be "sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Determining whether a deprivation is sufficiently serious also involves two inquiries. *Id.* The first question is whether the plaintiff was actually deprived of adequate medical care. *Id.* Prison officials who act "reasonably" in response to the inmates health risk will not be found liable under the Eighth Amendment because the official's duty is only to

---

[4] It appears that plaintiff was a pre-trial detainee while incarcerated at the Washington County Jail. Therefore, his claim for denial of medical care arises under the Fourteenth Amendment. However, the "the standard for deliberate indifference is the same under the Due Process Clause of the Fourteenth Amendment as it is under the Eighth Amendment." *Caiozzo v. Koreman*, 581 F.3d 63, 70-71 (2d Cir. 2009). Therefore, plaintiff's allegations will be analyzed under the Eight Amendment's deliberate indifference standards. *Id.*

7

provide "reasonable care." *Id.* (citing *Farmer*, 511 U.S. at 844–47).

The second part of the objective test asks whether the purported inadequacy in the medical care is "sufficiently serious." *Id.* at 280. The court must examine how the care was inadequate and what harm the inadequacy caused or will likely cause the plaintiff. *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 32–33 (1993)). If the "unreasonable care" consists of a failure to provide ***any*** treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir. 2003)). However, in cases where the inadequacy is in the medical treatment that was actually afforded to the inmate, the inquiry is narrower. *Id.* If the issue is an unreasonable delay or interruption of ongoing treatment, then the "seriousness" inquiry focuses on the challenged delay itself, rather than on the underlying condition alone. *Id.* (citing *Smith*, 316 F.3d at 185). The court in *Salahuddin* made clear that although courts speak of a "serious medical condition" as the basis for a constitutional claim, the seriousness of the condition is only one factor in determining whether the deprivation of adequate medical care is sufficiently serious to establish constitutional liability. *Id.* at 280.

### 2. Subjective Element

The second element is subjective and asks whether the official acted with "a sufficiently culpable state of mind." *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 300 (1991)). In order to meet the second element, plaintiff must demonstrate more than a "negligent" failure to provide adequate medical care. *Id.* (citing *Farmer*, 511 U.S. at 835–37). Instead, plaintiff must show that the defendant was "deliberately

8

indifferent" to that serious medical condition. *Id*. Deliberate indifference is equivalent to subjective recklessness. *Id.* (citing *Farmer*, 511 U.S. at 839–40).

In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety. *Id.* (citing *Chance*, 143 F.3d at 702). The defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must draw that inference. *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The defendant must be subjectively aware that his or her conduct creates the risk; however, the defendant may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was "insubstantial or non-existent." *Farmer*, 511 U.S. at 844. The court stated in *Salahuddin* that the defendant's belief that his conduct posed no risk of serious harm "need not be sound so long as it is sincere," and "even if objectively unreasonable, a defendant's mental state may be nonculpable." *Salahuddin* 467 F.3d at 281.

Additionally, a plaintiff's disagreement with prescribed treatment does not rise to the level of a constitutional claim. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001). Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id.* (citations omitted). An inmate does not have the right to treatment of his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). Because plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id.*

9

Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment. *Sonds*, 151 F. Supp. 2d at 312 (citing *Estelle v. Gamble*, 429 U.S. at 107). Even if those medical judgments amount to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate. *Id.; see also Daniels v. Williams*, 474 U.S. 327, 332 (1986) (noting that negligence is not actionable under § 1983). Thus, any claims of malpractice, or disagreement with treatment are not actionable under § 1983.

**B.     Application**

At the outset, the court notes that a seizure condition, in general, may be considered a sufficiently serious medical condition. *See Thompson v. Carter*, 284 F.3d 411, 419 (2d Cir. 2002) (plaintiff complaining that medical staff continued to deny him medication for Jacksonian Epilepsy). However, as explained above, where a plaintiff was provided treatment for a medical need, the inquiry is more narrow. Here, the court finds that the alleged deprivation of adequate medical care by defendant Rodenmayer was not sufficiently serious. Moreover, there is no evidence that defendant Rodenmayer acted with deliberate indifference.[5]

According to plaintiff, he suffered one seizure while he was being seen by

---

[5] At times, plaintiff argues that defendant Rodenmayer also denied him adequate medical care by not treating his finger properly and/or not ensuring that the Jail followed his instructions. (*See, e.g.,* Dkt. No. 1-1 at 2, Dkt. No. 1 at 7). To the extent plaintiff intends to base his medical care on this injury, the court finds that this injury is likely not a "serious" medical condition, and in any event, defendant Rodenmayer did not act with deliberate indifference. Indeed, plaintiff states that he later required surgery on his finger "due to the County Jail not following medical doctors orders." (Dkt. No. 1 at 7; *see also* Dkt. No. 15 at 10).

defendant Rodenmayer. (Dkt. No. 1 at 6 ("[Rodenmayer] repositioned my finger and during that procedure I had a seizure.")). The medical records confirm that plaintiff experienced a "shaking type episode" during this procedure. (Dkt. No. 50 at 46). Plaintiff was able to converse throughout this episode. (*Id.*). As a result of this one "seizure like episode" that defendant Rodenmayer witnessed, plaintiff admits that Rodenmayer stabilized him and asked him "a whole bunch of questions" that plaintiff answered. (Dkt. No. 1 at 6). Defendant Rodenmayer "instructed [that] he be placed on constant monitoring until he can be evaluated by medical staff [at the Jail] on Monday." (Dkt. No. 50 at 46). The medical records further note that plaintiff was ambulatory when he left the Emergency Department. (*Id.*).

Plaintiff does not allege that defendant Rodenmayer was present for, or even was informed of, any of the additional seizures described by plaintiff. (*See* Dkt. No. 1 at 6 (explaining that Rodenmayer asked him questions after the seizure, and "**after that** [he] had 3 more seizures in the ER") (emphasis added)). Likewise, it does not appear that defendant Rodenmayer was present for, or informed of, plaintiff's fall in the parking lot of the hospital. (Dkt. No. 1 at 6 ("[Plaintiff] was relea[s]ed back to corrections[ and] while walking back to the police car I fell out into another seizure in the parking lot. . . . The Staff at the hospital came out . . . and they told the head Nurse what had happened.")).

Plaintiff was provided with information regarding seizures at the time of his discharge from the hospital. (Dkt. No. 1-1 at 4-6). Records from the Jail confirm that plaintiff was placed on 1:1 supervision pursuant to P.A. Rodenmayer's instructions.

11

(Dkt. No. 1-1 at 7). Plaintiff was indeed seen by the provider at the Jail on the following Monday, and it appears he was placed on medication. (Dkt. No. 1-1 at 9).

Defendant Rodenmayer, who was present for one "shaking type episode," during which plaintiff was able to communicate, stabilized him, asked him follow-up questions, provided additional information to plaintiff, and instructed that he be under constant supervision. Plaintiff appears to simply be disagreeing with the treatment he received–that he was not immediately admitted to the hospital or given medication. (*See* Dkt. No. 1 at 6). However, it does not appear that defendant Rodenmayer had any information that would indicate that plaintiff needed to be admitted at the time of P.A. Rodenmayer's examination. Even if the failure to admit plaintiff to the hospital at that time, or to provide him medication, amounted to negligence or malpractice, it would not constitute deliberate indifference. In order to establish deliberate indifference, plaintiff must demonstrate more than a negligent failure to provide medical care. *Salahuddin v. Goord*, 467 F.3d at 280 (citing *Farmer*, 511 U.S. at 835-37). Instead, plaintiff must show that the defendant acted with the equivalent of subjective recklessness. *Id.* (citing *Farmer*, 511 U.S. at 839-40). Plaintiff has not shown that defendant Rodenmayer acted with deliberate indifference. Plaintiff produces no evidence to suggest that defendant Rodenmayer had any reason to keep him in the hospital or treat him in any other way.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendant Rodenmayer's motion for summary judgment (Dkt. No. 10) be **GRANTED**, and it is further

12

**RECOMMENDED**, that defendant Rodenmayer be **DISMISSED** from this action.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated: January 27, 2015

_____
Hon. Andrew T. Baxter
U.S. Magistrate Judge